FILED
 2011 Aug-02  AM 11:11
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DANIEL BLAKE HALL, | ] |
| Plaintiff, | ] |
| vs. | ]   7:10-cv-02137-LSC |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Pending is a motion seeking to dismiss count two of Plaintiff's complaint, filed December 8, 2010, by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). (Doc. 4.) Plaintiff Daniel Blake Hall filed suit against State Farm seeking recompense for injuries by asserting an underinsured[1] motorist claim and a claim for bad faith failure to pay insurance benefits. (Doc. 1.) State Farm now moves under Federal

---

[1] "Uninsured" includes "underinsured." Ala. Code § 32-7-23(b)(4). The terms are thus used interchangeably throughout this opinion.

Rule of Civil Procedure ("FRCP") 12 to dismiss Hall's bad faith claim because it is not yet ripe for adjudication, thus depriving the Court of subject matter jurisdiction. (Doc. 4.) The issues raised in Defendant's motion for partial dismissal are now ripe for decision. After considering the presented legal arguments and evidence, the motion is due to be granted in part.

II.   Facts and Procedural History.[2]

In January 2006, Hall suffered a car wreck leaving him with back pain caused by disc herniation at L4-5 and L5-S1. Though he initially received conservative therapy for his injuries, in October 2006, he began "asking for a surgery consult" for possible spinal fusion surgery. (Doc. 4-1 at 31-32.)

On December 9, 2006, Hall suffered another car wreck, the basis of the current suit. Hall was riding in a friend's car through a parking lot when Karen Seymer pulled out in front of them. Hall sustained further injuries, ultimately undergoing surgery: A two-level spinal cord fusion at L4-5 and L5-S1. The surgery left him with scars, hardware in his spine, and back problems, rendering him unable to work for some time and requiring him to

---

[2] The facts are derived from Hall's complaint, the parties' submissions and the exhibit attached to Defendant's motion to dismiss. (Doc. 4-1.)

delay completing his college degree at the University of Alabama. The medical expenses from the surgery and on-going problems allegedly exceed $88,966.05.

Hall's friend did not have automobile insurance coverage for the costs of Hall's injuries. Seymer, conversely, had insurance coverage through ALFA Mutual Automobile Insurance Company ("ALFA"), though her policy had a limit of $50,000. While negotiating with ALFA, Hall claimed benefits under his State Farm policies, which were to compensate Hall for up to $80,000 of injuries from liable uninsured motorists. With State Farm's consent, Hall settled his claims for $50,000.

Throughout 2008, Hall and State Farm corresponded: Hall explained his injuries; State Farm asked for additional medical records. State Farm remained uncertain about which accident caused his injuries. In 2009, State Farm told Hall that the settlement appeared to compensate him for the injuries he sustained in the Seymer accident but that it would reevaluate his claim if he deposed one of his doctors and received information suggesting Seymer's accident caused more of his injuries.

In 2010, Hall filed the present action, alleging Seymer's liability along

with State Farm's failure to investigate. Hall also claims a failure to pay uninsured motorist benefits and bad faith.

III.   Analysis.

State Farm argues that Hall's bad faith claims are not ripe.  Ripeness requires facts sufficiently developed to permit an "intelligent and useful decision." *Ex parte Safeway Ins. Co. of Alabama, Inc.*, 990 So. 2d 344, 353 n.5 (Ala. 2008) (defining "ripeness" and quoting *Black's Law Dictionary* 1353 (8th ed. 2004). A court will otherwise not decide a controversy. *Id.* Different facts yield different claims. Ripeness thus depends on the asserted claim.

Hall asserts two types of bad faith claims, normal and abnormal. Normal bad faith occurs if the insurance company has no "reasonably legitimate or arguable reason" to deny a request for insurance benefits; abnormal bad faith results if, in particular, the insurance company intentionally or recklessly fails to investigate the request for insurance benefits. *See Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32-34 (Ala. 2008). Stated another way, a normal claim results from the insurance company knowing it owes benefits and denying them anyway. An abnormal claim arises when an insurance company denies benefits without even

investigating into whether it owes them.

Distinctions in the two bad faith claims become important when an insured person claims benefits because of an uninsured driver's conduct, as Hall does here. All car insurance liability policies issued in Alabama must provide uninsured motorist coverage. *See* Ala. Code § 32-7-23(a). State Farm's insurance policies have agreed to pay for damage the "insured is legally entitled to collect from the owner or driver of" the uninsured car. *LeFevre v. Westberry*, 590 So. 2d 154, 157 (Ala. 1991) (emphasis omitted).

Uninsured motorist claims can, like other insurance claims, create situations where both types of bad faith exist, failure to pay and failure to investigate. But uninsured claims, unlike other insurance claims, allow the insurance company to contest the claim. When a policyholder files a claim for uninsured motorist benefits, the insurer must "diligently investigate the facts, fairly evaluate the claim, and act promptly and reasonably." *LeFevre*, 590 So. 2d at 161. The ultimate burden then falls to the policyholder to prove the uninsured driver's fault. And until the policy holder does that, the insurer may act as the uninsured driver and "aggressively defend the claim and attempt to defeat the claim, or at least to minimize the size of the

award." *Id.* at 160. The Alabama Supreme Court thus requires an insurer to diligently investigate and fairly evaluate claims for uninsured driver benefits but acknowledges that the insured must establish that the uninsured driver is liable.

The insurer may delay paying a claim while investigating without necessarily acting in bad faith. Normal bad faith failure to pay occurs only when the insurer fails to pay after the insured establishes a legal entitlement to recover. *Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983.) ("no bad faith, until the insured proves that he is legally entitled to recover"). To prove one is "legally entitled to recover," the insured must demonstrate "fault on the part of [the uninsured] which gives rise to damages and must be able to prove the extent of those damages." *Quick*, 429 So. 2d at 1035 (emphasis omitted). These two elements show breach of the insurance contract. *Id.* A normal bad faith claim requires, as a prima facie case, that the insured prove entitlement to judgment as a matter of law on the contract claim. *National Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 127 (Ala. 2002). If unable to demonstrate a breach of contract, a plaintiff cannot claim bad faith failure to pay. *See Ex*

*parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001).

If the insurer fails to investigate diligently and evaluate fairly the uninsured claim, a ripe claim for abnormal bad faith arises. *See LeFevre*, 590 So. 2d at 161-62. "[I]n order to prove a bad-faith-failure-to-investigate claim, the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999). In an uninsured motorist context, this abnormal claim becomes ripe when the insurer denies the claim, foreclosing any future investigation. *See TRW Inc. v. Andrews*, 534 U.S. 19, 34 n.6 (2001) (stating that the right to sue ripens on the same day that statutes of limitation commence); *Slade*, 747 So. 2d at 317 n.6 (noting that "the date of denial is crucial" in a bad-faith failure to investigate claim); *Safeway,* 990 So. 2d at 353 n.5 (defining ripeness). Ripeness, in sum, depends on concrete facts, not on abstract possibilities. *See Jacksonville Property Rights Ass'n, Inc., City of Jacksonville, FL,* 635 F.3d 1266, 1276 (11th Cir. 2011).

A.   Ripeness and Subject Matter Jurisdiction.

Ripeness "implicates subject-matter jurisdiction." *Pontius v. State*

*Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 562 (Ala. 2005). State Farm contends that Hall's complaint—both on its face and factually—fails to establish subject matter jurisdiction because Hall's injuries partially stem from his first car wreck. This causation issue, State Farm argues, prevents Hall from establishing that Seymer's negligent conduct gave rise to the extent of damages claimed by Hall.

The Court considers both of State Farm's challenges, factual and facial. Facial challenges address the allegations in the complaint, accepting them as true. *Ex parte Safeway*, 990 So. 2d at 349. Factual challenges, conversely, attack the underlying facts and require the court to resolve factual disputes about jurisdiction. *Id.* at 350.

    A.    Facial Challenge.

State Farm's facial challenge fails.  Hall's complaint alleges that "[he] has demonstrated that an underinsured motorist was at fault in the accident [and that a] letter, combined with other medical documentation in State Farm's possession, demonstrates the extent of Mr. Hall's injuries . . . ." (Doc. 1 at 4-5.)  Hall has alleged fault giving rise to an extent of damages. *See Ex parte Safeway*, 990 So. 2d at 352 ("[Plaintiff's] complaint appears

facially sufficient . . . . She avers that liability for the accident is uncontested and that the damages are undisputed.") He has thus alleged facts sufficient to establish Seymer's liability, State Farm's breach, and, thus, normal bad faith.

B.     Factual Challenge.

"[A] court deciding a Rule 12(b)(1) [lack of subject matter jurisdiction] motion asserting a factual challenge must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Ex parte Safeway*, 990 So. 2d at 350 (citations and quotation marks omitted). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Hall argues that the evidence establishes fault and the extent of damages claimed by Hall thus demonstrating State Farm's breach of contract. If so, such evidence makes his normal bad faith claim ripe, and renders this Court's jurisdiction appropriate. *Quick*, 429 So. 2d at 1035. Hall has established Seymer's fault in the accident. (Doc. 4-1 at 2, 5.) Hall

also contends that he has established damages at a level above the $80,000 policy limits making the extent of State Farm's damages clear and rendering State Farm's refusal to pay the policy limits a bad faith refusal.

The evidence does not establish that Hall's December 9, 2006 car wreck "gives rise" to the extent of his claimed damages.  *See Quick*, 429 So. 2d at 1035.  He cites as damages $88,966.05 in medical expenses, plus other expenses—therapy, medication, permanent impairment, and lost earning capacity. Surgery is the primary source of the expenses. Hall alleges that his injuries "will leave him with scars, metal hardware in his spine, and potential back problems." (Doc. 1 at 2.)  But Hall fails to establish that the December 9 wreck, not the earlier January wreck, caused the surgery.

On October 27, 2006, "[Hall was] asking for a surgery consult."  (Doc. 4-1 at 31.)  Four days later, Hall traveled to Mobile, Alabama, for a doctor visit and discussed how "to maximize conservative management prior to pursuing . . . possible fusion [surgery]."  (Doc. 4-1 at 32.)  The at-issue accident occurred on December 9, 2006.  On December 21, 2006, Hall's doctor stated that "[Hall] was receiving [physical therapy] . . . which was only of transient benefit.  He was then involved in [a second] automobile

trauma." (Doc. 4-1 at 34.) Over two years later, his doctor then stated that after the second accident, Hall's "further injury" necessitated "lumbar surgery." (Doc. 4-1 at 24.) Questions exist over whether the first or second accident led to the surgery.[3] Hall himself remains unsure whether the December accident caused or only "exacerbated" his injuries. (Doc. 1 at 2.)

Hall, in sum, seeks his policy limits of $80,000 for his injuries; yet he

---

[3]The Court finds further support for concluding that the normal bad faith claim is not ripe in the Alabama Pattern Jury Instructions ("APJI"). When a plaintiff aggravates pre-existing conditions, the jury instruction to be given is as follows: "If you find for the plaintiff, he would be entitled to recover for all damages which are the proximate result of defendant's negligence, including damages for the aggravation of any injury or condition which may have existed at the time of the incident made the basis of plaintiff's complaint." *Alabama Pattern Jury Instructions: Civil* 11.07 (2d ed.1993); *see Wiggins v. Mallard*, 905 So. 2d 776, 783 n.2 (Ala. 2004) (citing the Alabama Supreme Court Order of April 19, 1973, approving use of the APJI). The jury determines how to apportion damages stemming from the defendant's actions. Further evident upon close reading, the 11.04 instruction sets out additional guidance allowing the jury to "determine what portion, if any, of his condition resulted from the aggravation" and instructing it to "include in [its] verdict only what [it] consider[s] as reasonable compensation for the aggravation." *Alabama Pattern Jury Instructions: Civil* 230 (2d ed.1993) Alternatively, the additional guidance allows a jury to compensate a plaintiff suffering from a "latent," "unknown," or "not manifested" pre-existing condition to use its "discretion" to "adequately compensate plaintiff for his entire condition." *Alabama Pattern Jury Instructions: Civil* 230 (2d ed.1993) Thus, no fixed standard for deciding the "compensatory damages recoverable" exists, so any award "is left to the sound discretion of the jury." *J.B. Hunt Transport, Inc. v. Credeur*, 681 So. 2d 1355, 1363 (Ala. 1996). A jury has not awarded Hall damages for the accident with Seymer. The current breach of contract action against State Farm allows him to assert the compensatory damages that Seymer caused or aggravated. The factfinder must first determine the amount of Hall's compensatory damages before a normal bad faith claim under these facts is even possible.

has received $50,000 from Seymer's insurer for his injuries. He thus contends that his damages resulting from the accident with Seymer amount to $130,000, though the medical bills total $88,966.05. He has not carried his burden of establishing that contention. State Farm presents "evidence indicating that the damages are in dispute;" Hall conversely has failed to establish which damages he is entitled to recover from the accident with Seymer. *Ex parte Safeway*, 990 So. 2d at 352; *Quick*, 429 So. 2d at 1035. His normal bad faith claim is not yet ripe.

IV.  Conclusion.

For the reasons stated above, Defendant's motion for partial dismissal is due to be granted in part. (Doc. 4.) Hall's normal claim for bad faith failure to pay insurance benefits is DISMISSED without prejudice. State Farm's motion is DENIED regarding Hall's abnormal claim for bad faith failure to investigate. A separate order conforming with this opinion will be entered.

Done this 1st day of August 2011.

_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
159890