IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DANIEL BLAKE HALL, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 7:10-cv-2137-LSC |
| ) | |
| STATE FARM MUTUAL ) | |
| AUTOMOTIVE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), on June 26, 2012. (Doc. 40.) Plaintiff Daniel Blake Hall filed suit against State Farm on August 5, 2010, seeking recompense for injuries by asserting an under-insured motorist ("UIM") claim and a claim for normal and abnormal bad faith failure to pay insurance benefits. (Doc. 1.) On a motion to dismiss filed by State Farm, Hall's claim for normal bad faith failure to pay insurance benefits was dismissed without prejudice because it was not yet ripe for adjudication, leaving his UIM claim and claim

for abnormal bad faith failure to pay insurance benefits. (Doc. 14.) State Farm now moves under Federal Rule of Civil Procedure ("FRCP") 56 for summary judgment on Hall's abnormal bad faith claim. Defendant's motion for summary judgment has been briefed by the parties and is ripe for review. Upon full consideration of the legal arguments and evidence cited by the parties, it is the opinion of this Court that the motion for summary judgment is due to be denied.

II.   Facts.[1]

In January 2006, Hall was involved in a car accident causing injury to his spine and requiring him to seek medical treatment from multiple providers for his injuries. (Doc. 41 at 5.) Though he initially received physical therapy for his injuries, on October 27, 2006, he requested a surgery consult; however, the consulting physician concluded that he should undergo physical therapy as opposed to surgery. (*Id.* at 15–16; Doc. 47 at 4.)

On December 9, 2006, Hall was involved in another car accident, the basis of the current suit. (Doc. 41 at 5.) Hall was riding in a friend's car through a parking lot

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

when Karen Seymer, another driver, pulled out in front of them. As a result of the accident, Hall sustained further injuries, ultimately undergoing a two-level spinal cord fusion at L4-5 and L5-S1. Following the surgery, he was left with scars, metal hardware in his spine, and potential back problems for the rest of his life, rendering him unable to work for some time and requiring him to delay completing his college degree at the University of Alabama. The medical expenses from the surgery and on-going problems, including Hall's pain and suffering, allegedly exceed $88,966.05.

While Hall's friend did not have automobile insurance coverage, Seymer did have liability coverage through ALFA Mutual Automobile Insurance Company ("ALFA"), though her policy had a limit of $50,000. While negotiating with ALFA, Hall claimed benefits under his multiple State Farm automobile policies, which would compensate him for up to $80,000 of injuries from liable uninsured or underinsured motorists. With State Farm's consent, Hall settled his claims against Seymer for $50,000, reserving his right to continue his claims against his own uninsured and underinsured coverages.

Throughout 2008, Hall and State Farm corresponded regarding Hall's injuries. Hall provided State Farm with medical records, but State Farm asked for additional medical records, providing Hall with an Authorization for Release of Information. Hall

did not sign the Authorization, and in 2009, State Farm told Hall that the settlement appeared to compensate him for the injuries he sustained in the December, 2006 accident, but that it would reevaluate his claim if he deposed one of his doctors and received information suggesting Seymer's accident caused more of his injuries.

In 2010, Hall filed the present action, alleging, *inter alia*, that State Farm acted in bad faith in failing to conduct a reasonable investigation of his claims and ultimately denying his claim for UIM benefits. Specifically, Hall argues that he provided sufficient documentation of the accident and his injuries to demonstrate to State Farm that he is legally entitled to recover under the UIM policy, but State Farm did not subject the provided medical records to any review by a qualified medical professional nor review available medical references and resources to evaluate the submitted evidence.

III. Standard of Review.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] The party moving for summary judgment "always bears

---

[2] Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, FRCP 56 " requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). " A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.     Analysis.

State Farm asserts several theories for why it did not commit abnormal bad faith in its investigation of Hall's claim for UIM benefits. The most compelling argument State Farm makes is that because there was a lawful basis for the claim decision, it is entitled to summary judgment on the abnormal bad faith claim.

The law pertaining to bad faith has evolved over the last 30 years in Alabama. The Alabama Supreme Court first recognized the tort of bad faith failure to pay a first party claim, or "normal bad faith," in 1981, when it held that the tort arises "where there is either '(1) no *lawful basis* for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'" *Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1, 7 (Ala. 1981) (emphasis added) (quoting *Vincent v. Blue Cross-Blue Shield of Alabama, Inc.*, 373 So. 2d 1054, 1067 (Ala. 1979) (Embry dissenting)). *See also Jones v. ALFA Mutual Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008) (normal bad faith now requires a plaintiff to prove "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal"). One year after *Chavers*, the Alabama Supreme Court clarified the bad faith test, noting that "in order for a plaintiff to make out a

prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *National Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) (hereinafter, this requirement will be referred to as the "directed verdict rule").

The directed verdict rule in a bad faith failure to pay action follows from the requirement that there be no *lawful basis* for the insurance company's refusal of the insured's claim. "No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.'" *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (quoting *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916 (Ala. 1981)). In order to avoid a directed verdict, there must be "sufficient evidence to produce a conflict warranting jury consideration." *Bussey v. John Deere Co.*, 531 So. 2d 860, 863 (Ala. 1988). A directed verdict "should be refused where reasonable inferences may be drawn from the evidence unfavorable to the party requesting it or where there is a conflict in any material matter at issue." *Baker v. Chastain*, 389 So. 2d 932, 934 (Ala. 1980). If the Court is not prepared to grant a directed verdict as to the insured on his claim, then there must be an arguable reason for failing to pay the claim–a lawful basis–and the insurer cannot be liable for a bad

faith failure to pay as a matter of law.

Over the next decade, the Alabama Supreme Court noted several examples of "unusual or extraordinary cases of bad faith." *See State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 306 (Ala. 1999). These unusual or extraordinary cases of bad faith are referred to as "abnormal bad faith," and relief thereunder has been limited to only a few situations. *Nat'l Ins. Ass'n. v. Sockwell*, 829 So. 2d 111, 129–31 (Ala. 2002). One such situation occurs when the insurer "intentionally or recklessly fail[s] to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review." *Thomas v. Principal Financial Group*, 566 So. 2d 735, 744 (Ala. 1990). In order to prevail under this theory of "bad faith failure to investigate," the plaintiff must produce substantial evidence showing "(1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Simmons v. Congress Life Ins. Co.*, 791 So. 2d 371, 379 (Ala. 2000); *Sockwell*, 829 So. 2d at 129–31. The effect of the second element is that "the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract," thus preserving "the link between contractual liability and

bad faith liability required by *Chavers*, supra and *Dutton*, supra." *Slade*, 747 So. 2d at 318. However, it has not yet been held by the Alabama Supreme Court to require the plaintiff to show that there is no lawful basis for the insurer's refusal of the UIM claim. Thus, the ability to obtain a directed verdict has not yet been required in order to maintain a bad faith failure to investigate action. *See Jones*, 1 So. 3d at 32-34 ("[t]he rule in 'abnormal' cases dispensed with the predicate of a preverdict JML [judgment as a matter of law] for the plaintiff on the contract claim if the insurer had recklessly or intentionally failed to properly investigate a claim or to subject the results of its investigation to a cognitive evaluation").

Despite the absence of the application of the directed verdict rule in a bad faith failure to investigate action, there are other considerations in the context of a UIM claim. In order to be entitled to uninsured motorist benefits, Alabama's uninsured motorist statute requires that the insured be "legally entitled to recover" damages from the owner or operator of the uninsured automobile. Ala. Code 1975 § 32-7-23. In many cases, including this one, the insured's UIM policy incorporates substantially the same language as the statute. (Doc. 41 at 7) (State Farm required to "pay damage for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle"). The Alabama Supreme Court has noted:

> Uninsured motorist coverage in Alabama is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract. At the same time, however, third-party liability principles also are operating in that the coverage requires the insured to be "legally entitled" to collect-that is, the insured must be able to establish fault on the part of the uninsured motorist and must be able to prove the extent of the damages to which he or she would be entitled. The question arises: when is a carrier of uninsured motorist coverage under a duty to pay its insured's damages?
>
> There is no universally definitive answer to this question or to the question when an action alleging bad faith may be maintained for the improper handling of an uninsured or underinsured motorist claim; the answer is, of course, dependent upon the facts of each case. Clearly, there is a covenant of good faith and fair dealing between the insurer and the insured, as with direct insurance, but the insurer and the insured occupy adverse positions until the uninsured motorist's liability is fixed; therefore, there can be no action based on the tort of bad faith based on conduct arising prior to that time, only for subsequent bad faith conduct.

*LeFevre*, 590 So. 2d at 159. In other words, in addition to the general requirements to maintain a bad faith action, "there can be no bad-faith action based on conduct arising before the uninsured motorist's liability is established and damages are fixed." *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 565 (Ala. 2005). See also *Quick v. State Farm Mut. Auto Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983); *Ex parte Safeway Ins. Co. Of Alabama, Inc.*, 990 So. 2d 344, 351 (Ala. 2008); *LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991).

The bad faith that Hall alleges in this case occurred during State Farm's

investigation of his UIM claim–a period that extended past the point when State Farm approved the acceptance of the $50,000 settlement from the underlying tortfeasor. If the jury finds that the damages suffered by Hall were clearly more than the $50,000 settlement and that the December accident necessitated the surgery, Hall will have established that Seymer was liable for his injuries and that the damages were then fixed above what was offered by State Farm. For this reason, it would not be appropriate for the Court to dismiss Hall's abnormal bad faith claim at this time. It would however be appropriate to try the breach of contract claim first and only if a verdict is returned against State Farm would the issue of potential bad faith be presented to the jury.

V.   Conclusion.

The motion for summary judgment will be DENIED. The trial on the issues will be conducted in a bifurcated fashion. A separate order will be entered consistent with this opinion.

Done this 7th day of December 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032